UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PEDRO GUARCAS, EDGAR ORELLANA,:
ROBERTO QUINILLA, PEDRO US,     :
DOMINGO AJ, BAIRON LOPEZ,       :
RAFAEL HERNANDEZ, and           :
EDGAR VARGAS,                   :
          Plaintiffs,        :
                             :
    v.                        :    C.A. No. 15-056ML
                             :
GOURMET HEAVEN, LLC,            :
RI GOURMET HEAVEN, INC., CHUNG  :
CHO, and GSP CORP. d/b/a        :
SERENDIPITY GOURMET,            :
          Defendants.        :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Before the Court is the motion to dismiss (ECF No. 31) of Defendant GSP Corp. d/b/a

Serendipity Gourmet ("GSP"), which has been referred to me for report and recommendation.  A

hearing was held on November 15, 2016.  For the reasons that follow, I recommend that the

motion be denied.

I.    **Background**[1]

In their Second Amended Complaint ("Complaint"), Plaintiffs Pedro Guarcas, Edgar

Orellana, Roberto Quinilla, Pedro Us, Domingo Aj, Bairon Lopez, Rafael Hernandez, and Edgar

Vargas ("Plaintiffs") claim to have worked at a retail food business in Providence, Rhode Island,

that operated as a single enterprise, "Gourmet Heaven," with locations on Weybosset Street and

Meeting Street.  ECF No. 22 ¶¶ 4-8.  Each Plaintiff claims that, during periods ranging from as

early as June 2011 until 2014, he worked at Gourmet Heaven and was paid less than the amount

---

[1] Except as otherwise indicated, these facts are drawn from the Second Amended Complaint.  ECF No. 22.

required by federal and state minimum wage and overtime laws; each is suing to recoup his earned but unpaid wages.[2]  ECF No. 22 ¶¶ 13-54.

During the period when Plaintiffs were working at the "Gourmet Heaven" enterprise, the Weybosset Street store was owned by Defendant Gourmet Heaven, LLC, while the Meeting Street store was owned by Defendant RI Gourmet Heaven, Inc.  ECF No. 22 ¶¶ 7-8.  Defendant Chung Cho was the sole member of Gourmet Heaven, LLC, the sole shareholder of RI Gourmet Heaven, Inc., and the sole decision-maker regarding Plaintiffs' wages and working conditions at both "Gourmet Heaven" locations.  ECF No. 22 ¶¶ 9-10.  Each Plaintiff alleges that he was working for all three of these Defendants – Cho and his two entities – operating as a single enterprise.  ECF No. 22 ¶¶ 6, 13, 18, 23, 30, 35, 41, 46, 50.

Throughout the time that Plaintiffs were working for the enterprise, neither the notice explaining FLSA that is required by 29 C.F.R. § 516.4 nor the notice summarizing the state wage law required by R.I. Gen. Laws § 28-12-11 was ever posted.  ECF No. 22 ¶¶ 55-56.  Nor did Cho or his entities ever furnish Plaintiffs with a statement of earnings, including a record of hours worked and itemized deductions, as required by R.I. Gen. Laws § 28-14-2.1.  ECF No. ¶ 57.  At times all of the Plaintiffs were paid entirely or partially "off-the-books" in cash; during part of the period in dispute, some of the Plaintiffs were paid in cash after they had worked forty hours in one week.  ECF No. 22 ¶¶ 15, 20-21, 26-27, 32-34, 38-40, 43-45, 48, 52-54.  Plaintiffs do not speak or write English and did not discover the violations of their legal rights while they were still working for Gourmet Heaven.  ECF No. 22 ¶¶ 58-59.

---

[2] Plaintiffs allege that they worked long hours and performed physical labor.  Their Complaint arises under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Rhode Island Minimum Wage Act ("RIMWA"), R.I. Gen. Laws § 28-12-1, *et seq.*  ECF No. 22 ¶¶ 1,14-17,19-22, 24-29, 31-34, 36-40, 42-45, 47-49, 51-54.

2

During the same time that he was operating the "Gourmet Heaven" enterprise in Rhode Island, Cho also owned and operated several similarly named retail food businesses in Connecticut. ECF No. 22 ¶ 65. In February of 2014, he was arrested in Connecticut on charges relating to his treatment of workers at stores located in New Haven, and charged with fifty-one felony and misdemeanor counts of wage theft, larceny, and defrauding immigrant workers. Id. at ¶ 66; see State v. Cho, No. N23NCR140145772, 2014 WL 7461827 (Conn. Super. Ct. Nov. 17, 2014). On June 23, 2015, the Connecticut federal court ordered Cho to secure the sum of $175,664.12 to pay six workers suing him for wage theft. Id. at ¶ 68; see Morales v. Gourmet Heaven, Inc., Civil Action No. 3:14-CV-01333 (VLB), 2015 WL 3869419, at *3 (D. Conn. June 23, 2014). In this decision, which is published on Westlaw, the court explained the finding that Cho acted with a lack of good faith based on the fact that "Defendants [Cho and the Connecticut "Gourmet Heaven" entity] have continued to violate minimum wage laws while having an open criminal case for the same offense." Morales, 2015 WL 3869419, at *3. In September 2015, Cho filed for personal bankruptcy in Connecticut and in December 2015, he testified in Connecticut that he had no assets, contradicting a prior sworn statement that he was worth between $1 and $10 million. ECF No. 22 ¶¶ 83-84.

While the case against Cho in Connecticut was proceeding, in February 2015, Plaintiffs filed this case in the District of Rhode Island. ECF No. 1. Included with Plaintiffs' opposition to the motion to dismiss, but not pled in their Complaint,[3] is evidence of significant media coverage between February 2015 and May 2015 of public protests regarding Gourmet Heaven's treatment

---

[3] It is clear to the Court that Plaintiffs did not plead these facts, which are plainly established as "true" for Fed. R. Civ. P. 12(b)(6) purposes by the unchallenged documents attached to their brief, because, prior to today's decision they did not understand them to be material. My analysis as laid out in this report and recommendation leads to the conclusion that the Complaint is sufficient without them. If the District Court disagrees, I recommend that Plaintiffs be allowed to replead to include these facts because "[they] were unaware until today's decision of the test that this court would apply when deciding whether successor liability had been plausibly pleaded." Valdez v. Celerity Logistics, Inc., 999 F. Supp. 2d 936, 947 (N.D. Tex. 2014).

of its workers, including coverage of Cho's criminal charges in Connecticut, of the closing of the Meeting Street "Gourmet Heaven" in December 2014 in the wake of Cho's legal and financial difficulties,[4] and of the filing of this litigation.  ECF No. 34-2 at 20.  Meanwhile, Cho and his two entities sought and received various extensions of deadlines for filing responsive pleadings in this case, ultimately answering on May 11, 2015.  ECF No. 22 ¶ 69; ECF No. ¶¶ 30.

With this case pending on the public record, on April 9, 2015, one month before Cho and his two entities finally answered the Complaint, and as the adverse publicity about Cho and his treatment of workers was swirling in the media and in court dockets, GSP filed its articles of incorporation with the Rhode Island Secretary of State, listing as its address "173 Weybosset Street."  This address is not only the location of the remaining "Gourmet Heaven" store, but is also the address listed in the articles of incorporation for Defendant Gourmet Heaven, LLC. ECF No. 22 ¶¶ 70-72.  In its incorporating papers, GSP identified Dae Hyun Yoo as its registered agent; Yoo is the Chief Executive Officer of a wholesale food supply company called B.C.S. Corporation ("B.C.S.").  ECF No. 22 ¶¶ 70, 73-74.  B.C.S. has two subsidiaries, Hyun Dai International Food Corp. ("Hyun Dai") and New York Cheese Corp. ("New York Cheese"). ECF No. 22 ¶ 74.  While operating the "Gourmet Heaven" enterprise in Rhode Island, Cho regularly ordered inventory from B.C.S. and its subsidiaries Hyun Dai and New York Cheese. ECF No. 22 ¶ 74.

With this case still pending on the public record, on May 20, 2015, GSP and Cho entity Gourmet Heaven, LLC, signed an "Asset Purchase Agreement," pursuant to which GSP agreed

---

[4] Consistent with the closing of the Meeting Street store location as reported in the media, the Cho entity that had owned the Meeting Street "Gourmet Heaven" store (RI Gourmet Heaven Inc.) had its entity status revoked by the Rhode Island Secretary of State on December 1, 2015.  ECF No. 34-2 at 41 (certificate of revocation of incorporation/authority).  Unlike the media screen shots attached to Plaintiffs' brief, the Court may consider this official public record of the Secretary of State without converting this motion to dismiss to a motion for summary judgment.  Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) ("courts have made narrow exceptions for . . . official public records;" thus, "court may properly look beyond the complaint to matters of public record and doing so does not convert a Rule 12(b)(6) motion to one for summary judgment").

to pay $500,000 for the "[r]etail food store located at 173 Weybosset Street," including "all of the chattels and merchandise contained in the premises where the business is conducted, together with all other equipment customarily used therein in connection with the operation of the business, and the lease to the business premises." ECF No. 22 ¶ 75. The sale transferred to GSP the right to use the Seller's trade name, and the right to the telephone number then used by the business. ECF No. 22 ¶ 75. On June 25, 2015 GSP filed the fictitious name "Serendipity Gourmet." ECF No. 22 ¶ 76.

The closing papers for the sale were executed on September 14, 2015, again with this case still pending on the public record. ECF No. 22 ¶ 77. As the parties agree, the closing documents reveal that much of the purchase price (almost $225,000) was paid directly to the State of Rhode Island and the City of Providence for back taxes. ECF No. 31-3 at 2; ECF No. 34-2 at 38. Almost all the balance ($225,389.11) was paid directly by GSP effectively to itself, in that it was paid to Hyun Dai and New York Cheese to satisfy "existing debts." ECF No. 22 ¶ 78. The seller, "Chung Cho/Gourmet Heaven, LLC," received only $1620.78. ECF No. 22 ¶ 79. An Indemnity Agreement attached to the closing statement also included Cho's false representation that there were "no actions at law, suits in equity or other legal proceedings pending in which the Seller is a party . . . ." ECF No. 22 ¶ 80. The same false assertion is repeated in an attached Affidavit of No Creditors. Id.

Two days later after the closing, GSP "took over operation" of the Weybosset Street store and renamed it "Serendipity Gourmet." ECF No. 22 ¶ 81. The store continues to operate at the same address, with many of the same employees, selling the same products, with a sign using the same font and colors, including the word "Gourmet;" exterior signs proclaim that it is "under

new management." ECF No. 22 ¶ 82. Two weeks later, on September 30, 2015, Cho filed for personal bankruptcy in Connecticut. ECF No. 22 ¶ 83.

On March 14, 2016, the Rhode Island Secretary of State filed a notice of intent to revoke the entity status of Gourmet Heaven, LLC for failure to file an annual report. ECF No. 22 ¶ 86. As of this writing, the official public record at the Office of the Secretary of State establishes that the certificates of organization of both the Cho entities have been revoked. ECF No. 34-2 at 41-42. See Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (official public records may be considered without converting motion to dismiss to motion for summary judgment); Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993) (same).

## II.      Standard of Review

When reviewing a complaint on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court "must assume the truth of all well-plead facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007) (citing Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999)). The court "may consider not only the factual allegations of the amended complaint but also any matters fairly incorporated within that pleading." See In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 15 (1st Cir. 2003). Complaints must state a claim that is plausible on its face to survive a motion to dismiss. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted).

## III.     Law and Analysis

GSP's motion attacks the viability of Complaint for two reasons – because a portion of the claims are barred by the FLSA statute of limitations and because the pleading fails to allege facts sufficient to impose successor liability upon GSP.

### A.      FLSA Statute of Limitations

GSP's first argument – based on the applicable statute of limitations – may readily be set aside.  With a group of Plaintiffs whose claims reach back three years, and in two instances more, GSP points to the FLSA's two-year limitations period, applicable to claims resulting from non-willful violations, and argues that Plaintiffs should be foreclosed from seeking to recoup for unpaid wages for the period prior to February 18, 2013.  See 29 U.S.C. § 255.  This argument founders on the FLSA's extension of the limitation period to three years for willful violations. Reich v. Newspapers of New Eng., Inc., 44 F.3d 1060, 1079 (1st Cir.1995) ("The FLSA imposes a two-year statute of limitations unless the violations are shown to be willful, in which case a three-year period applies.") (citing 29 U.S.C. § 255(a)).  Plaintiffs' Complaint is chock-a-block full of plausible facts on which a finding of willfulness may be based, starting with the allegations that Defendants failed to keep time records, committed minimum wage violations, and made payments off the books after workers exceeded forty hours in a week.  See Chao v. Hotel Oasis, Inc., 493 F.3d 26, 35 (1st Cir. 2007) (finding of willfulness affirmed based on evidence of failure to keep adequate payroll records and manipulation of records it did keep).  Furthermore, the claims of the two Plaintiffs whose claims go back more than three years are saved by plausible allegations that Defendants failed to comply with state and federal notice requirements and failed to notify these non-English-speaking Plaintiffs of their rights under the FLSA.  At the Fed. R. Civ. P. 12(b)(6) phase, these allegations are more than sufficient to support equitable tolling.  See Blake v. CMB Constr., No. 90-388-M, 1993 WL 840278, at *6

(D.N.H. March 30, 1993) (citing Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946) and Kamens

v. Summit Stainless, Inc., 586 F.Supp. 324, 328 (E.D. Pa. 1984)).  Consequently, GSP's motion

to dismiss based on the applicable statute of limitations should be denied.[5]

### B.   Successor Liability

Far more substantial is GSP's second argument, which challenges Plaintiffs' attempt to

impose successor liability on GSP for the alleged wrongful conduct of Cho and his two entities.

GSP argues that it has no liability for the actions of Cho and his entities unless Plaintiffs can

establish successor liability in derogation of the well-settled principle that "[g]enerally, a

company that purchases the assets of another is not liable for the debts of the transferor

company."  H.J. Baker & Bro. v. Orgonics, Inc., 554 A.2d 196, 205 (R.I. 1989).  To establish its

liability, GSP contends that Plaintiffs must meet the elements of the applicable standard drawn

from the rigorous test developed by the Rhode Island Supreme Court in  H.J. Baker, and not

from the less-strict federal common law test developed in the Ninth Circuit in Steinbach v.

Hubbard, 51 F.3d 843, 845-46 (9th Cir. 1995).  When the proper legal standard is applied to the

allegations in the Complaint, GSP asserts that Plaintiffs fall woefully short of stating a claim.

Finally, whether or not the Court adopts the federal common law test for Plaintiffs' FLSA

claims, GSP argues that their state law claims must be dismissed because the stringent H.J. Baker

standard is not satisfied.

### i.   FLSA Successor Liability

Since 1995, federal courts that have addressed successor liability in FLSA cases have

focused on the FLSA's fundamental purpose: to "protect workers' standards of living through

---

[5] GSP's motion does not attack Plaintiffs' state law claims on statute-of-limitation grounds, perhaps in recognition that the basic limitation period is three years, not two.  R.I. Gen. Laws § 28-14-19.2.  In any event, equitable tolling plausibly applies to the state law claims for the same reasons why it protects the FLSA claims that extend beyond the three-year period.  Johnson v. Newport Cty. Chapter for Retarded Citizens, Inc., 799 A.2d 289, 293 (R.I. 2002) (equitable tolling is available as an exception to the statute of limitations in employment cases).

the regulation of working conditions." Steinbach v. Hubbard, 51 F.3d at 845. Animated by "that fundamental purpose . . . as fully deserving of protection as labor peace, anti-discrimination, and worker security," they have forged a federal common law successorship doctrine based on principles developed in other employment contexts. Id. Since the seminal decision in Steinbach, at least two other Circuits and many lower courts have opted for the federal common law test, highlighting the special considerations of equity and fairness so critical in FLSA cases. See Thompson v. Real Estate Mortg. Network, 748 F.3d 142, 151 (3d Cir. 2014); Teed v. Thomas & Betts Power Solutions, 711 F.3d 763, 766 (7th Cir. 2013); Bautista v. Beyond Thai Kitchen, Inc., No. 14 Civ. 4335 LGS, 2015 WL 5459737, at *3-4 (S.D.N.Y. Sept. 17, 2015); Valdez v. Celerity Logistics, Inc., 999 F. Supp. 2d 936, 940 (N.D. Tex. 2014); Thompson v. Bruister & Associates, Inc., No. 3:07-00412, 2013 WL 1099796, at *6 (M.D. Tenn. Mar. 15, 2013).

These decisions focus on public policy considerations that lead to the conclusion that a more relaxed approach to successor liability promotes the remedial purposes of the FLSA. At their core is the proposition that a FLSA violator should not be permitted to escape liability or obstruct its employees from obtaining relief by selling or transferring its assets to a buyer and then dissolving its corporate status. Cuervo v. Airport Servs., Inc., 984 F. Supp. 2d 1333, 1338 (S.D. Fla. 2013) (citing Teed, 711 F.3d at 766). Because of the importance of these public policy goals, the trend in the case law favors recognition of successor liability in the FLSA cases where the issue squarely arises. Valdez, 999 F. Supp. 2d at 941–42 (citing Cuervo, 984 F. Supp. 2d at 1336-38 & n. 5 (collecting cases)).

Against the rising tide of cases adopting the Steinbach test, or something like it, GSP cites the First Circuit's decision in United States v. Davis, 261 F.3d 1 (1st Cir. 2001). In Davis, the Court declined to apply federal common law to successor liability in a CERCLA case,

holding "that the majority rule is to apply state law 'so long as it is not hostile to the federal

interests animating CERCLA.'"  261 F.3d at 54.  In support of this holding, Court explained that,

in order to justify the creation of a federal rule, "there must be a specific, concrete federal policy

or interest that is compromised by the application of state law."[6]  261 F.3d at 54 (quoting

Atchison, Topeka & Santa Fe Railway Co. v. Brown & Bryant, Inc., 159 F.3d 358, 363-64 (9th

Cir.1998)).

　　　　In contrast with CERCLA as addressed in Davis, it is precisely the "specific, concrete

federal policy or interest that is compromised by the application of state law" that has impelled a

growing list of courts to opt for the federal common law test in FLSA cases.  Significantly, GSP

does not cite, and this Court could not find, an FLSA case that has made a successor liability

determination and selected a more stringent state law test, rather than the approach used in

Steinbach, Teed, Real Estate Mortgage Network, and the many district courts cases that follow

their lead.  Far from supporting a rejection of the Steinbach test, Davis is consistent with the

proposition that federal common law should be applied in FLSA cases because of the different

policy considerations present.  In accordance with this conclusion, the only district court case in

this Circuit to grapple with the issue of successor liability in the related setting of a Title VII

employment case turned not to state law, but to the federal common law based on policy

considerations.  E.E.O.C. v. Preferred Labor LLC, Civil Action No. 06-40190-FDS, 2009 WL

415429 *3 (D. Mass. Feb. 13, 2009).

　　　　Based on the foregoing, I conclude that the FLSA successor liability determination is

governed by the federal common law test.  See Real Estate Mortg. Network, 748 F.3d at 150-51

(federal common law doctrine of successor liability protects important employment-related

---

[6] Davis is not alone in concluding that no federal policy or principle requires a federal successor liability test in the CERCLA setting.  See United States v. Bestfoods, 524 U.S. 51, 63 (1998).  This contrasts starkly with FLSA cases where no case has been found that rejects the federal common law approach.

policies in FLSA cases because the "standard presents a lower bar to relief than most state jurisprudence"); Teed, 711 F.3d at 764 ("when liability is based on a violation of a federal statute relating to labor relations or employment, a federal common law standard of successor liability is applied that is more favorable to plaintiffs than most state-law standards to which the court might otherwise look").

Turning to the elements of the federal common law test, the cases generally deploy a three-prong approach that considers 1) whether the purchaser is a *bona fide* successor; 2) whether the purchaser had notice of the potential liability; and 3) the extent to which the predecessor can provide adequate relief directly.  Steinbach, 51 F.3d at 846.  A variation on the test was adopted by Bautista, 2015 WL 5459737, at *6, which articulated nine factors, based on the original three: (1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same plant; (5) whether the new employer uses the same or substantially the same work force; (6) whether the new employer uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether the new employer uses the same machinery, equipment, and methods of production; and (9) whether the new employer produces the same product.  2015 WL 5459737, at *5-6 (citing Musikiwamba v. ESSI, Inc., 760 F.2d 740, 750 (7th Cir. 1985) and E.E.O.C. v. MacMillan Bloedel Containers, Inc., 503 F.2d 1086, 1094 (6th Cir.1974)).  Whichever test is used, "[w]hether an employer qualifies as a bona fide successor will hinge principally on the degree of business continuity between the successor and predecessor."  Valdez, 999 F. Supp. 2d at 940 (quoting Steinbach, 51 F.3d at 846).  As Judge

Posner wrote in <u>Teed</u>, "We suggest that successor liability is appropriate in suits to enforce federal labor or employments laws – even when the successor disclaimed liability when it acquired the assets in question – unless there are good reasons to withhold such liability." 711 F.3d at 766.

Plaintiffs' Complaint contains more than sufficient facts to establish that GSP is a *bona fide* successor, based on the "continuity in operations and workforce of the successor and predecessor employers." <u>See</u> <u>Real Estate Mortg. Network</u>, 748 F.3d at 150 (quoting <u>Einhorn v. M.L. Ruberton Constr. Co.</u>, 632 F.3d 89, 94 (3d Cir. 2011)). For example, it alleges that GSP purchased "all of the chattels and merchandise contained in the premises where the business is conducted, together with all other equipment customarily used therein in connection with the operation of the business, and the lease to the business premises." The Complaint explicitly states that the "sale also included the right to use the Seller's trade name, and the right to the telephone number then used by the business;" it includes the facts that, when GSP "took over operation" it renamed the store "Serendipity Gourmet" and uses signage in the same font and colors as its predecessor used; and it claims that the GSP operation is a continuation of the operation at the same address with many of the same employees selling the same products. <u>See</u> <u>Real Estate Mortg. Network</u>, 748 F.3d at 152 (continuity of business established where "all facets of the business at issue, including operations, staffing, office space, email addresses, employment conditions, and work in progress remained the same . . ."). Plaintiffs' allegations are also more than adequate to meet the detailed <u>Bautista</u> test. 2015 WL 5459737, at *5-6 (same location, same or substantially same work force, same or substantially same supervisors, same jobs under substantially same working conditions, same methods of production, and same product).

Before closing the door on the first <u>Steinbach</u> element, one issue raised by GSP is worthy of discussion. That is, what is the entity to which it allegedly is the successor? Is it the entire Rhode Island "Gourmet Heaven" enterprise operated by Cho, which included both the Weybosset Street and Meeting Street stores? Or is it just the Weybosset Street store, which GSP purchased in an asset acquisition from Gourmet Heaven, LLC – since RI Gourmet Heaven Inc. (and the Meeting Street store that it operated) ceased to exist as of the end of 2015?

The answer, for now, is that successor liability for the entire Cho operation is pled with sufficient plausibility so that Plaintiffs' claims for the failure to pay wages for work performed at either location should proceed. See <u>Falk v. Brennan</u>, 414 U.S. 190, 195 (1973) (FLSA contemplates several simultaneous employers, each responsible for compliance with the Act); <u>Real Estate Mortg. Network</u>, 748 F.3d at 154 ("The focus is on 'the totality of the circumstances rather than on technical concepts of the employment relationship.'"). There are two reasons for this conclusion. First, Plaintiffs have alleged that each of them worked for the entire enterprise; as counsel explained during argument, each Plaintiff performed tasks related to one store or the other and performed work that benefited the combined operation. As alleged in the Complaint, from the perspective of the employees, Cho and his two entities operated the two stores as a single enterprise. ECF No. 22 ¶ 6. Second, the Complaint alleges plausible facts permitting the inference that GSP was the successor to Cho's entire enterprise. The Complaint alleges that Cho sold what was left of his enterprise to GSP to eliminate tax liens and to pay the trade debts he owed to GSP subsidiaries, and that GSP essentially continued the business as the same operation. The Complaint alleges that Cho who was the sole member of Gourmet Heaven, LLC; that he executed the documents pertaining to the sale;[7] and that it was to "Chung Cho/Gourmet Heaven"

---

[7] The fact that Cho executed the sale documents is not specifically plead, but may be inferred from the Complaint, which repeatedly alleges that Cho was the only member of Gourmet Heaven, LLC, and therefore the only person

that GSP paid the net sales proceeds.  ECF No. 22 ¶¶ 9, 79.  And it was Cho, as alleged in the

Complaint, who had the prior dealings with Hyun Dai and New York Cheese that resulted in

what the Complaint implies was the diversion of the sale proceeds right back into the pockets of

the buyer, GSP.  ECF No. 22 ¶¶ 70-78.  For Fed. R. Civ. P. 12(b)(6) purposes, this is more than

enough to establish that GSP is a *bona fide* successor to the Cho's entire Rhode Island enterprise.

Real Estate Mortg. Network, 748 F.3d at 152-54 (reversing dismissal of successor liability claim

because claimant not required to "come forward with detailed proof at [Fed. R. Civ. P. 12(b)(6)

stage;" complaint allegations, made before claimant has access to discovery, sufficient to allow

successor liability claim to proceed).

     The second Steinbach factor examines whether GSP had actual or constructive notice that

Cho was trying to sell his way out from under the FLSA claims of his allegedly exploited

employees.  At the Fed. R. Civ. P. 12(b)(6) phase, courts are forgiving of claimants who struggle

to demonstrate notice before engaging in discovery.  Real Estate Mortg. Network, 748 F.3d at

152-54 (notice is not a matter as to which claimant should be expected to come forward with

detailed proof at [Fed. R. Civ. P. 12(b)(6) stage").  Rather, the inquiry focuses on whether the

buyer of the business knew or should have known of the pending litigation.  Bruister &

Associates, 2013 WL 1099796, at *7.  A pleading establishing that the litigation is a matter of

public record in a court docket permits the inference of notice, as does the expectation that

normal due diligence, in the absence of collusion, would uncover such matters.  Id. (citing

Musikiwamba, 760 F.2d at 752 ("Normally, the burden [is] on the successor to find out from the

predecessor all outstanding potential and actual liabilities.")).  This approach is consistent with

---

who could have done so.  ECF No. 22 ¶¶ 9, 65.  This is not just speculation – Cho's involvement is confirmed by the
sales documents attached by both parties to their briefs.  See ECF No. 31-2 at 3; ECF No. 31-3 at 3; ECF No. 31-5
at 2; ECF No. 34-2 at 36.  Although the parties do not dispute the authenticity of these documents, for purposes of
the motion to dismiss, I rely solely on the permissible inferences drawn from the facts alleged in the Complaint.

the compelling policy reasons to impute constructive notice when the pleading is sufficient to permit the inference that the successor failed to exercise due diligence in "an unspoken but mutually understood game of 'don't ask, don't tell.'" Goodpaster v. ECP Am. Steel, LLC, No. 1:09-CV-59 JVB, 2012 WL 5267971, at *4 n.3 (N.D. Ind. Oct. 24, 2012); see Bautista, 2015 WL 5459737, at *8 ("[t]he proper rule is one that encourages shoppers for substantial assets simply to get the whole story and adjust their offers accordingly").

Viewed through the lens of these cases, Plaintiffs' Complaint more than adequately alleges notice to GSP of its predecessor's legal obligations. Real Estate Mortg. Network, 748 F.3d at 150; Steinbach, 51 F.3d at 846. First, before GSP blindly accepted Cho's false representation that there were no pending claims and closed on the asset purchase of the Rhode Island "Gourmet Heaven" enterprise (as the Complaint characterizes the transaction) in September 2015, Cho's business reputation with respect to the treatment of workers had been sullied by public criminal charges filed in February 2014, by the public filing of the original complaint in this case in February 2015, and by the scathing public opinion of Judge Bryant in the District of Connecticut in Morales v. Gourmet Heaven, Inc., 2015 WL 3869419, at *3. Cho's bankruptcy filing two weeks after the closing confirms the inference arising from these facts that minimal due diligence would have exposed that "Gourmet Heaven" was facing potential FLSA liability. GSP's pre-closing ongoing business dealings with the Cho "Gourmet Heaven" enterprise through its two affiliates, Hyun Dai and New York Cheese gilds the lily.

Taking Plaintiffs' well-pled facts as true, and drawing all reasonable inferences in Plaintiffs' favor, I find that GSP was sufficiently on notice of the FLSA claims asserted in this case prior to its acquisition of the Gourmet Heaven, LLC assets.

The last prong of the successor liability test is "(3) the ability of the predecessor to provide adequate relief directly." Real Estate Mortg. Network, 748 F.2d at 150 (quoting Brzozowski v. Corr. Phys. Servs., Inc., 360 F.3d 173 at 178 (3rd Cir. 2004)); see also Teed, 711 F.3d at 766 ("[t]he predecessor's inability to provide relief favors successor liability, as without it the plaintiff's claim is worthless"). This task is easy – Cho is now bankrupt and Defendants Gourmet Heaven, LLC, and R.I. Gourmet Heaven, Inc., are defunct. ECF No. 22 ¶ 83; ECF No. 34-2 at 41, 42; see also ECF No. 22 ¶ 84 (Cho testified at a hearing in Connecticut that he has no assets). All three plainly are "likely incapable of satisfying any award of damages." See Real Estate Mortg. Network, 748 F.3d at 153; see Bruister & Assocs., 2013 WL 1099796, at *7 (third prong satisfied where "predecessor employer is unable to provide relief because [it] is now little more than a hollow shell").

Based on the foregoing analysis, I find that Plaintiffs' FLSA claims against GSP based on the federal common law doctrine of successor liability are well pled. I recommend that GSP's motion to dismiss Plaintiffs' claims be denied.

### ii. Successor Liability under Rhode Island Law

Plaintiffs' state law claims for unpaid minimum wages and overtime pay under the Rhode Island Minimum Wage Act, R.I. Gen. Laws § 28-12-1, *et seq.* ("RIMWA"), are cognizable in this Court by virtue of its supplemental jurisdiction. However, these claims are governed by Rhode Island's standard for successor liability. See Real Estate Mortg. Network, 748 F.3d at 153. Thus, the claims asserted against GSP are viable only if Plaintiffs can plausibly invoke an exception to well-settled state law that a Rhode Island corporation is generally not liable for the debts of its predecessor. Casey v. San-Lee Realty, Inc., 623 A.2d 16, 19-20 (R.I. 1993); H.J. Baker, 554 A.2d at 205. The exceptions relevant to this case arise when the purchaser

corporation is merely a continuation of the seller corporation, or when the transaction is entered into fraudulently to escape liability for such obligations. Casey v. San-Lee Realty, 623 A.2d at 19. Even when this strict Rhode Island standard is applied to their RIMWA claims, Plaintiffs argue that their Complaint is sufficient to state a claim.

First, the applicable successor liability test must be identified. In this, the Court must be guided by the Rhode Island Supreme Court's seminal decision, H.J. Baker & Bro. v. Orgonics, Inc., 554 A.2d 196 (R.I. 1989). H.J. Baker sets out "five persuasive criteria" for assessing whether a corporation is merely a continuation of its predecessor and therefore responsible for its predecessor's debts:

> (1) there is a transfer of corporate assets; (2) there is less than adequate consideration; (3) the new company continues the business of the transferor; (4) both companies have at least one common officer or director who is instrumental in the transfer; and (5) the transfer renders the transferor incapable of paying its creditors because it is dissolved either in fact or by law.

554 A.2d at 205; see Casey v. San-Lee Realty, 623 A.2d at 19. In adopting this test, the Court emphasized that its application requires an examination of the facts of the particular case. H.J. Baker, 554 A.2d at 205. It further noted that the five-factor test is not rigid in that other factors, such as the continued use of the same office and the selling of the same product to the same customer base, may also be relevant. Id. Further, for successor liability based on fraud, the H.J. Baker court held that relevant factors include "suspect occurrences," such as collusive actions by the individuals involved in the allegedly fraudulent scheme, with an emphasis on whether the facts are sufficient to establish a "scenario to defraud." Id. at 202. In Casey, the Rhode Island Supreme Court revisited the issue of successor liability based on the "continuing entity" theory and reaffirmed the use of the H.J. Baker test in that context. 623 A.2d 18-19.

Since deciding Casey in 1993, the Rhode Island Supreme Court has not addressed successor liability.  However, the federal court in neighboring Massachusetts has done so in a case where Rhode Island law controlled.  John T. Callahan & Sons, Inc. v. Dykeman Elec. Co., 266 F. Supp. 2d 208, 224-25 (D. Mass. 2003).  In Callahan, the District Court evaluated a claim based on successor liability under the "mere continuation" theory.  Based on a careful examination of Rhode Island decisions, including one that adverts to the New Jersey precedent from which the H.J. Baker test was drawn, Ed Peters Jewelry Co. v. C & J Jewelry Co., 124 F.3d 252, 266 (1st Cir. 1997), the Massachusetts District Court held that Rhode Island law would not always require the presence of all the Baker factors to find a successor corporation liable as a mere continuation of the seller.  John T. Callahan & Sons, 266 F. Supp. 2d at 224-25 ("if one factor was sufficient it is doubtful that the Rhode Island Supreme Court would have discussed the confluence of factors").

GSP somewhat tepidly argues that the Complaint fails to clear the Twombly[8] plausibility bar as to the H.J. Baker factors; its most strenuous argument is based on Plaintiffs' failure to establish one factor:  the Complaint fails to name a single officer or director common to both seller and buyer.  To buttress its argument, GSP contends that the Callahan holding that a claimant need not present proof of every H.J. Baker factor is wrong and must be ignored.  Without an allegation that GSP and Gourmet Heaven, LLC, shared a common officer or director, GSP argues that Plaintiffs cannot properly assert their state law claim against GPS.  In relying on this rigid interpretation of the H.J. Baker test, GSP ignores that case's alternative path to successor liability – fraud.  554 A.2d at 202; see Jackson v. Diamond T. Trucking Co., 100 N.J. Super. 186, 192-93, 241 A.2d 471, 475 (Law. Div. 1968) ("actual fraud" test is distinct from "mere continuation" test).

_____

[8] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).

GSP's contention that this Court should ignore Callahan is based on little more than that it was a decision issued by a Massachusetts court.  GSP makes no effort to present a principled argument that Callahan somehow misinterpreted the Rhode Island cases it examined, or that it overlooked controlling authority.  This is not surprising – Callahan sets forth a thorough and careful analysis of the applicable authority.  Moreover, in the thirteen years since it was written, Callahan has never been criticized by any Rhode Island court; to the contrary, it was cited with approval in Richmond Ready-Mix v. Atl. Concrete Forms, Inc., No. Civ.A. 92-0960, 2004 WL 877595, at *9 (R.I. Super. Apr. 21, 2004).  Accordingly, consistent with Callahan, I conclude that the Rhode Island successor liability test applicable to this case is a flexible one.  Plaintiffs' state law claims may proceed as long as there are plausible facts to establish most of the H.J. Baker factors, particularly if there are facts permitting the inference that the sale transaction may have been intentionally structured by Cho and GSP acting in collusion to defraud the former "Gourmet Heaven" employees asserting FLSA claims.

I conclude that Plaintiffs' Complaint is good enough to "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 547.  To begin, the first, third and fifth H.J. Baker factors – transfer of assets, continuation of the business, and transfer that renders the seller unable to pay its creditors – are more than sufficiently pled.  The remaining issue, the second H.J. Baker factor, is whether the Complaint's allegations are sufficient to permit an inference that Cho was less than adequately compensated for the sale of his entities' assets.  This factor "rests on the theory that inadequate consideration is competent circumstantial evidence from which the factfinder reasonably may infer that the transferor harbored a fraudulent intent to evade its obligations to creditors." Ed Peters Jewelry, 124 F.3d at 270 (citing Ricardo Cruz Distribs., Inc. v. Pace Setter, Inc., 931 F.Supp. 106, 110 (D.P.R. 1996)).  To meet this element,

Plaintiffs point to an array of plausible facts permitting the inference that the sale of the "Gourmet Heaven" Weybosset store was not an arm's length business transaction, but rather was an arrangement between close business associates resulting in nearly half of the purchase price being disbursed to corporations owned and operated by an official representative of the purchaser, and leaving no assets available for satisfaction of claims against the seller.

At this early phase of the case, such a factual array is enough to give rise to the inference that "the transferor harbored a fraudulent intent to evade its obligations to creditors."[9]  See Ed Peters Jewelry, 124 F.3d at 270-71 (error to dismiss fraud-based successor liability claim where part of sale proceeds was immediately reinjected into two acquiring companies for capital improvements and debt service).  And the allegations of GSP's ongoing business relationship with Cho, coupled with its "don't ask/don't tell" acceptance of Cho's flagrantly false representation that he had no creditors or pending claims, is enough to taint GSP with the inference of collusion so as to keep the state law claims alive.

## IV.    <u>CONCLUSION</u>

Based on the foregoing, I recommend that Defendant GSP Corp. d/b/a Serendipity Gourmet's Motion to Dismiss (ECF No. 31) be denied.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party.  See Fed. R. Civ. P. 72(b)(2);

---

[9] Alternatively, Plaintiffs can get to the same place by reference to the Rhode Island Uniform Fraudulent Transfer Act, R.I. Gen. Laws § 6-16-4(a), which sets out factors to consider in determining whether a transfer is fraudulent, many of which are present here.  For example, "[b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit."  R.I. Gen. Laws § 6-16-4(b)(4).  Further, "[t]he transfer was of substantially all the debtor's assets."  R.I. Gen. Laws § 6-16-4(b)(5).  Third, "[t]he debtor abscond[s]."  R.I. Gen. Laws § 6-16-4(b)(6); see ECF No. 22 ¶ 85 (alleging Cho has moved to New Jersey and begun work in New York).  Fourth, "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred."  R.I. Gen. Laws § 6-16-4(b)(8-9).  And last, "[t]he transfer occurred shortly before or shortly after a substantial debt was incurred."  R.I. Gen. Laws § 6-16-4(b)(10); see Morales v. Gourmet Heaven, Civil Action No. 3:14-CV-01333 (VLB), 2015 WL 3869419 (D. Conn. June 23, 2014) (Cho ordered by Connecticut district court to secure the sum of $175,664.11 to pay six Connecticut workers).

DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 30, 2016